

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   2/1/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHIQIU CHEN and CHANGREN ZOU, et al.,

               Plaintiffs,

       -against-

BEST MIYAKO SUSHI CORP., et al.,

               Defendants.

16-CV-2012 (JGK) (BCM)

**REPORT AND RECOMMENDATION
TO THE HON. JOHN G. KOELTL**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiffs Shiqiu Chen and Changren Zou worked as deliverymen at Miyako Sushi restaurant in Manhattan until October 2014. They filed this action on March 17, 2016, pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and N.Y. Labor Law (NYLL) § 650 *et seq.*, seeking unpaid minimum wages, unpaid overtime and spread-of-hours (SOH) premiums, expense reimbursement, and related relief. On January 27, 2017, plaintiffs filed their Third Amended Complaint (TAC) (Dkt. No. 82), which names as defendants Best Miyako Sushi Corp. d/b/a Miyako Sushi (Best Miyako), Satori Sushi Corp. d/b/a Miyako Sushi (Satori), Lobster Sushi Corp. d/b/a Miyako Sushi (Lobster), Kaiyi Inc. d/b/a Miyako Sushi (Kaiyi), Xiang Zhuang Chen, Peter Zou, Hiuling Cheung, Xue Tiao, Fat Hin Cheng, and Hang Ying Li a/k/a Jenny Li. Thereafter, plaintiffs settled their claims against defendants Kaiyi, Xiang Zhuang Chen, and Hang Ying Li (collectively the Kaiyi Defendants), obtained certificates of default against defendants Best Miyako, Satori, Lobster, Peter Zou, Hiuling Cheung, Xue Tiao Chen, and Fat Hin Cheng (collectively the Defaulted Defendants), and moved for a default judgment. The case is now before me for an inquest into plaintiffs' damages against the Defaulted Defendants.

1

As discussed in greater detail below, plaintiffs failed to effect service of process on any of the Defaulted Defendants except Satori. Because this Court lacks personal jurisdiction over the unserved defendants, I recommend, respectfully, that no default judgment be entered against them and no damages be awarded against them. Satori was properly served via the Secretary of State in compliance with N.Y. Bus. Corp. Law § 306(b)(1). However, plaintiffs' allegations as to Satori fail to establish as a matter of law that it was plaintiffs' employer, as that term is used in the FLSA and the NYLL, during the period they worked at Miyako Sushi. Since a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants," *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015) (summary order), I further recommend that no default judgment be entered against Satori and no damages be awarded against it.

## I.   BACKGROUND

### A.   The Complaint and Initial Answer

Plaintiffs' original Complaint (Compl.) (Dkt. No. 1) ran against three corporations (Best Miyako, Satori, and Lobster), five named individuals (Xiang Z. Chen, Peter Zou, Hiuling Cheung, Xue Tiao Chen, and Fat Hin Cheng) and a sixth individual identified only as "Jane Doe." Each plaintiff alleged that from September 2013 to October 2014 he was "employed by" the individual defendants "to work as a deliveryman for" the corporate defendants. Compl. ¶¶ 7, 41, 8, 56. Each plaintiff further alleged that he worked 75-1/2 hours per week at a flat rate of no more than $1200 per month, with no overtime or SOH premiums, no fixed meal breaks, and no reimbursement for his out-of-pocket costs incurred in making deliveries, including gasoline, motorcycle, and (in Zou's case) electric bicycle expenses. *Id.* ¶¶ 42-55, 57-69.

2

According to plaintiffs, each of the five individual defendants "is an officer, director, manager and/or majority shareholder" of all three corporate defendants, Compl. ¶ 19, and "as one of the ten largest shareholders" is "individually responsible for unpaid wages." *Id*. Moreover, each individual defendant allegedly "is in charge of all areas of the restaurant," including hiring and firing, determining rates of pay, and setting work schedules, assignments, and employment policies, and is therefore "an employer," as that term is used in the FLSA and NYLL, and "jointly and severally liable" with the corporate defendants. *Id*. ¶¶ 20-31. No further detail is provided regarding any of the corporate defendants, except that Best Miyako "is" (and Satori and Lobster "were") New York corporations with an address at 642 Amsterdam Avenue, New York, New York 10025, which is the address of Miyako Sushi restaurant. *Id*. ¶¶ 9, 13, 16. Similarly, no further detail is provided regarding any of the individual defendants, except that "Jane Doe" was known as "Boss" and Peter Zou was known as "Manager." *Id*. ¶¶ 20, 24.

On this basis, plaintiffs asserted thirteen claims under the FLSA and NYLL, each running against all defendants: (1) failure to pay the statutory minimum wages required by the FLSA, 29 U.S.C. § 206; (2) failure to pay the statutory minimum wages required by NYLL § 650 *et seq.* and related regulations, *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.2; (3) failure to pay overtime compensation as required by the FLSA, 29 U.S.C. § 207(a); (4) failure to pay overtime compensation as required by the NYLL and related regulations, *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; (5) failure to pay the SOH premium required by the NYLL and related regulations, *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6; (6) breach of an implied contract for reimbursement of all costs and expenses of plaintiffs' motor vehicles; (7) breach of an implied contract for reimbursement of all costs and expenses of Zou's electric bicycle; (8) failure to provide meal periods as required by NYLL § 162; (9) failure to maintain weekly

payroll records for at least six years, as required by NYLL and related regulations, *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.1; (10) failure to provide a "time of hire" wage notice at the outset of each plaintiff's employment, as required by NYLL § 195(1)(a); (11) failure to provide wage statements with each payment of wages, as required by NYLL § 195(3); (12) willful filing of fraudulent information returns with respect to payments purported to have been made to plaintiffs, which according to plaintiffs provides a basis for a civil damages claim under 26 U.S.C. § 7434; and (13) deceptive acts and practices in violation of N.Y. General Business Law § 349. Compl. ¶¶ 80-154.

On June 3, 2016, attorney John S. Yong appeared and answered on behalf of defendants Best Miyako and Xiang Z. Chen. (Dkt. Nos. 21, 24.)

### B.        Service of Process

On June 21, 2016, plaintiffs filed affidavits of service as to Best Miyako, Satori, Lobster, Peter Zou, Hiuling Cheung, Xue Tiao Chen, and Fat Hin Cheng. (Dkt. Nos. 25-31.) The affidavits are signed by process server Dominique Galluzzi, who attests that she served all seven of these defendants by delivering copies of the Amended Summons (Dkt. No. 9) and Complaint on June 8, 2016, at 12:05 p.m., to an individual identified as Sheckie "Doe," at 642 Amsterdam Avenue. The affidavits provide a physical description of Ms. "Doe" (female, 36-50 years old, 5'4" to 5'8", 100-130 pounds) but no information about her position or responsibilities, except that the affidavits regarding service on the corporate defendants identify her (by checking a box) as a person that Galluzzi "knew to be a managing agent thereof authorized to accept service" (Dkt. Nos. 25-27), and the affidavits regarding service on the individual defendants identify her (by checking another box) as "a person of suitable age and discretion" at the individual defendants' "actual place of business." (Dkt. Nos. 28-31.) Additionally, as to the individual

4

defendants, Galluzzi attests that she followed up by mailing a copy of the Amended Summons and Complaint to each of them at the same address. *Id.*

According to the online database maintained by the New York Department of State (DOS), Division of Corporations, Best Miyako was at that time (and still is) an active New York corporation. *See* Plaintiffs' Proposed Findings of Fact and Conclusions of Law (Prop. Findings) (Dkt. No. 198) Ex. 1 (Dkt. No. 198-1), at ECF page 1.[1] Satori was an inactive New York corporation, with a dissolution date of May 6, 2014. *Id.* at ECF page 3. Lobster was also an inactive New York corporation, with a dissolution date of January 15, 2013. *Id.* at ECF page 5. Hiuling Cheung was listed as the Chief Executive Officer of Satori, while Xue Tiao Chen was listed as the Chief Executive Officer of Lobster. *Id.* at ECF pages 3, 5. According to the online database maintained by the Liquor Authority, Fat Hin Cheng was the alcoholic beverage control principal of Lobster with respect to a liquor license that expired on February 28, 2013. *Id.* at ECF page 7.

On December 6, 2016, plaintiffs filed a second affidavit of service as to Satori, attesting that the Amended Summons and Complaint were served upon it on November 21, 2016, by delivering copies to Sue Zoukey, an authorized agent of the Secretary of State, in Albany, New

---

[1] Exhibit 1 to plaintiffs' Proposed Findings is a collection of printouts from the websites maintained by DOS and by the New York Liquor Authority, Division of Alcoholic Beverage Control (ABC). I construe plaintiffs' submission of these documents – which they cite as support for their proposed findings of fact, *see* Prop. Findings at ECF page 7, ¶¶ 40-45 – as a request that the Court take judicial notice of the information contained therein pursuant to Fed. R. Evid. 201, which I grant. *See Ruixuan Cui v. E. Palace One, Inc.*, 2019 WL 4573226, at *9 n.13 (S.D.N.Y. Sept. 20, 2019) (quoting *Haru Holding Corp. v. Haru Hana Sushi, Inc.*, 2016 WL 1070849, at *2 (S.D.N.Y. Mar. 15, 2016)) (a court may "take[ ] judicial notice [pursuant to Fed. R. Evid. 201] of the public Entity Information provided by the New York State Department of State, Division of Corporations") (alternations in the original); *J & J Sports Prods., Inc. v. His & Hers Bar & Lounge Inc.*, 2018 WL 4925706, at *4 (E.D.N.Y. Aug. 31, 2018) (taking judicial notice of identity of ABC principal listed on entity's liquor license), *report and recommendation adopted,* 2018 WL 4922912 (E.D.N.Y. Oct. 9, 2018).

York. (Dkt. No. 64.) The record does not reflect any further efforts to serve defendants Best Miyako, Lobster, Peter Zou, Hiuling Cheung, Xue Tiao Chen, or Fat Hin Cheng.

### C.      Amended Pleadings

On July 14, 2016, after the Hon. John G. Koeltl, United States District Judge, referred this action to me for settlement (Dkt. No. 34), I held a conference attended by attorney John Troy for plaintiffs and attorney Yong for Best Miyako and Xiang Z. Chen. During the conference, counsel advised that the other defendants – none of whom had appeared – were "former owners and/or operators of the restaurant where plaintiffs worked." (Dkt. No. 39.) Mr. Troy explained that he was working to understand which defendants operated the restaurant at what times, and to that end was awaiting "the production of documents by Best Miyako concerning the change in ownership of the restaurant." *Id*.

On August 12, 2016, Mr. Troy submitted a letter (Dkt. No. 40) reporting that he had received "some but not all of the transfer documents." The letter went on to inform the Court that Mr. Yong had "mistakenly put in a Notice of Appearance for the wrong corporation." *Id*. Instead of appearing for Best Miyako, Mr. Yong "should have put in a Notice of Appearance for Kaiyi Inc., with a start date of ownership of the restaurant on January 9, 2014." *Id*. Kaiyi was not, at the time, a named defendant in this action.

On October 6, 2016, after Judge Koeltl expanded my reference to include general pretrial management (Dkt. No. 44), I gave plaintiffs leave amend their complaint (Dkt. No. 45 at 2), which they did on October 14, 2016. The Amended Complaint (Amend. Compl.) (Dkt. No. 48) added a fourth corporate defendant – Kaiyi – and a second Doe defendant, "Kaiyi Doe." Amend. Compl. ¶¶ 20, 36. It also added a third plaintiff, Wei Shi, who alleged that he was employed by all of the individual defendants to work as a deliveryman for all of the corporate defendants from

November 1, 2014 to January 14, 2016. *Id*. ¶ 77. Additionally, the Amended Complaint identified Xiang Z. Chen by his full name, Xiang Zhuang Chen, *id*. ¶ 26, and alleged that plaintiff Zou began work at Miyako Sushi in September 2012 (one year earlier than alleged in the original Complaint). *Id*. ¶ 62. Plaintiffs did not otherwise expand or modify their claims.

On October 27, 2016, Mr. Yong appeared for Kaiyi (Dkt. No. 49), and on November 8, 2016, he submitted a letter (Yong Ltr.) (Dkt No. 50) seeking permission to withdraw as counsel for Best Miyako. Mr. Yong explained that his previous appearance for Best Miyako was "in error as the only defendant we have been in contact with is, Xiang Zhuang Chen, who owns only one corporation, that corporation being Kaiyi Inc." Yong Ltr. at 1. He added, "We do not have contact information or means of communicating with Best Miyako Sushi Corp. or any of its principals." *Id*. I granted the motion to withdraw on January 2, 2017. (Dkt. No. 66.)

On November 15, 2016, after an initial case management conference, I gave plaintiffs leave to amend their complaint again. (Dkt. No. 56 ¶ 1.) On December 1 and 2, 2016, Mr. Troy sought an extension of his time to do so on the ground that he had still not received "the bulk sale transaction papers." (Dkt. Nos. 59, 62.) I granted the extension (Dkt. No. 63), and on January 13, 2017, plaintiffs filed their Second Amended Complaint (SAC) (Dkt. No. 76), which dropped "Kaiyi Doe" as a defendant and identified "Jane Doe" as Jane Li a/k/a Jenny Li. Additionally, the SAC alleged that Jenny Li was known as "Lady Boss" and was the wife of Xiang Zhuang Chen, who was known as "Boss." SAC ¶¶ 24, 26, 27. Finally, rather than alleging that each individual defendant "in charge of all areas of the restaurant," *see* Compl. ¶¶ 20, 22, 24, 26, 28, 30; Amend. Compl. ¶¶ 24, 26, 28, 30, 32, 34, 36, the SAC alleged that each individual "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee

7

records at" all four corporate defendants. SAC ¶¶ 24, 27, 29, 31, 33, 35. Plaintiffs did not otherwise expand or modify their claims.

On January 27, 2017, plaintiffs filed their fourth and final complaint, replacing Jane Li a/k/a Jenny Li with Hang Ying Li a/k/a Jenny Li. TAC ¶¶ 24-25. Plaintiffs did not otherwise expand or modify their claims.

Defendants Kaiyi and Xiang Zhuang Chen answered the TAC on January 31, 2017. (Dkt. No. 83.) Defendant Hang Ying Li answered on July 28, 2017. (Dkt. No. 107.) Thereafter, the Kaiyi Defendants filed a Rule 7.1 Statement certifying that Kaiyi had no "corporate parents, affiliates, and/or subsidiaries." (Dkt. No. 106.)

Defendants Best Miyako, Satori, Lobster, Peter Zou, Hiuling Cheung, Xue Tiao Chen, and Fat Hin Cheng never appeared in this action.[2]

### D.      Trial Preparation and Settlement with the Kaiyi Defendants

After discovery concluded, Judge Koeltl scheduled the case for a bench trial. (Dkt. No. 113.) In their pretrial filings, the Kaiyi Defendants asserted that Kaiyi "began operations of the sushi restaurant on or about January 10, 2014," after "purchas[ing] the assets of the predecessor Lobster Sushi Corporation," and that since that date Xiang Zhuang Chen, the owner of Kaiyi, had been "the sole manager" of the restaurant. Kaiyi Prop. Findings (Dkt. No. 116) ¶¶ 5-7.

On November 29, 2017 – the day trial was to commence – plaintiffs and the Kaiyi Defendants announced that they had settled. (Dkt. No. 123.) Judge Koeltl directed them to file their written settlement agreement, and instructed plaintiffs to "move for a default judgment against any remaining defendants" within 30 days. *Id.* After several extensions, the settling

---

[2] Because Best Miyako "never appeared through counsel authorized to represent it, the Court considers . . . that [it] has never appeared." (Dkt. No. 63 ¶ 2.)

parties filed their settlement agreement on May 31, 2018 (Dkt. No. 141-1), and all claims against

the Kaiyi Defendants were dismissed on June 21, 2018. (Dkt. No. 148.)

### E.    Default Proceedings

Plaintiffs delayed in seeking a default judgment against the non-appearing defendants.

By order dated December 4, 2018 (Dkt. No. 156), Judge Koeltl directed plaintiffs to submit

proposed certificates of default by December 20, 2018, which they did. (Dkt. Nos. 157-164.)

Certificates were issued pursuant to Fed. R. Civ. P. 55(a) on December 21, 2018 as to Satori,

Lobster, Peter Zou, Hiuling Cheung, Xue Tiao Chen, and Fat Hin Cheng (Dkt. Nos. 166-171),

and on May 30, 2019 as to Best Miyako. (Dkt. No. 179.) On March 18, 2019, Judge Koeltl

granted plaintiffs' motion to "amend the caption in this matter to reflect the full name of

Defendant 'PETER ZOU' as 'ZONG HAN ZOU a/k/a PETER ZOU.'" (Dkt. No. 173.)

On July 26, 2019, plaintiffs moved by order to show cause (Dkt. No. 183), supported by

the declaration of their attorney (Troy Decl.) (Dkt. No. 181) for a default judgment against all

seven Defaulted Defendants. On September 12, 2019, Judge Koeltl granted that motion (Dkt. No.

193) but, rather than entering judgment, referred the case to me for a report and recommendation

on damages. (Dkt. No. 192.)

On September 18, 2019, I issued a Scheduling Order (Dkt. No. 194) directing plaintiffs to

file proposed findings of fact and conclusions of law, supported by admissible evidence as to

damages, and to serve their inquest papers upon the Defaulted Defendants. In that order, I noted

that the manner in which plaintiffs claimed to have served the Defaulted Defendants with process

raised "questions as to whether this Court has personal jurisdiction over each and every [one] of

the seven Defaulted Defendants, an issue of which 'it must assure itself' before it enters default

judgment against those defendants." Sched. Order at 2 (quoting *Ahn v. Inkwell Pub. Sols., Inc.*, 2013 WL 3055793, at *3 (S.D.N.Y. June 19, 2013).

### F.   Proposed Findings

On November 10, 2019, plaintiffs filed their Proposed Findings, supported by the affidavits of plaintiffs Shiqiu Chen (Chen. Aff.) (Dkt. No. 198-65) and Changren Zou (Zou Aff.) (Dkt. No. 198-66) and attaching, among other things, a damages chart, see Prop. Findings Ex. 60 (Dkt. No. 198-60), and the time records of plaintiff's counsel. *Id.* Ex. 59 (Dkt. No. 198-59). Notwithstanding that the Scheduling Order pointedly advised plaintiffs of the Court's concern regarding personal jurisdiction, the Proposed Findings do not address the issue other than to assert, in a single paragraph, that all of the Defaulted Defendants "were served with the summons and complaint" in accordance with the affidavits of service filed on June 21, 2017. Prop. Findings at ECF pages 3-4, ¶ 17.[3]

Plaintiffs served the Proposed Findings and supporting papers on the Defaulted Defendants on November 18 and 20, 2019, by mailing them to 642 Amsterdam Avenue. (Dkt. Nos. 200-212.) The Defaulted Defendants did not respond.

Plaintiff Chen seeks an award of $17,536.99 in damages (including unpaid wages, unpaid overtime and SOH premiums, reimbursement of the costs of operating his delivery vehicle, liquidated damages, and statutory damages for defendants' failure to provide a wage notice and wage statements), together with prejudgment interest at the statutory rate of 9%, in the amount of $2,729.99 (as of November 10, 2019). Prop. Findings at ECF pages 26-27, ¶ 63(b) & Ex. 60.

---

[3] Citations to the Proposed Findings include ECF page numbers because the paragraphs in that document are mis-numbered. Paragraphs 1 through 57 are followed by paragraphs 39 through 65, which are followed by paragraphs 39 through 88, which are followed, in turn, by paragraphs 39 through 63.

Plaintiff Zou seeks $92,820.71 in damages and $24,757.17 in prejudgment interest (as of November 10, 2019). *Id.* ¶ 63(a) & Ex. 60. In addition, plaintiffs jointly seek $25,309.42 in attorney's fees and costs, representing 91.44 hours worked by attorney Troy and his colleagues at rates ranging from $75 to $550 per hour. *Id*. ¶ 63(c) & Ex. 59.

Although both Chen and Zou alleged in their pleadings that they worked for all defendants through October 2014, *see* Compl. ¶¶ 41, 56; TAC ¶¶ 46, 61, they only seek damages for their work through October 23, 2013, Prop. Findings at ECF pages 9-10, ¶¶ 40, 44, which Chen describes as his "work period with Defaulting Defendants." Chen Aff. ¶ 4. Plaintiff Shi, who alleged that he worked for all defendants from November 1, 2014 to January 14, 2016, *see* TAC ¶ 76, now concedes that he "did not work for the Default[ed] Defendants" at all, and thus does not seek damages against them. Prop. Findings at ECF page 9, ¶ 56.

## II.    ANALYSIS

Since no party has requested a hearing on the issue of damages, and since defendants have not submitted any written materials, I have conducted the inquest based solely upon the materials submitted by plaintiffs. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) ("[A] district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence."); *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993) (quoting *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991)) ("Rule 55(b)(2) of the Federal Rules of Civil Procedure . . . 'allows but does not require the district judge to conduct a hearing.'").

11

A.      **Legal Standards**

1.      **Jurisdiction**

Absent subject matter jurisdiction, this Court has no power to enter any judgment, including a default judgment, or award damages thereon. *See*, *e.g*., *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (on appeal from default judgment, remanding case to district court "for further fact-finding" on the issue of subject matter jurisdiction). Moreover, the federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party," *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), and even (perhaps especially) after default. *See*, *e.g*., *Gosain v. Texplas India Private Ltd.*, 393 F. Supp. 3d 368, 375 (S.D.N.Y. 2019) (adopting magistrate judge's recommendation to vacate default judgment and dismiss action, *sua sponte*, for lack of subject matter jurisdiction); *Campbell v. Bank of New York Mellon Tr. Co.*, 2012 WL 2952852, at *6-8 (S.D.N.Y. May 8, 2012) (noting obligation to examine subject matter jurisdiction "[d]espite Defendants' default," and recommending after inquest that certain of plaintiffs' claims be dismissed, *sua sponte*, under the *Rooker-Feldman* doctrine), *report and recommendation adopted sub nom. Campbell v. Bank of New York Tr. Co.*, 2012 WL 2953967 (S.D.N.Y. July 18, 2012).

Additionally, "before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.,* 619 F.3d 207, 213 (2d Cir. 2010); *see also Ahn*, 2013 WL 3055793, at *3-5 (denying application for default judgment against defendants who were not "served timely or properly with the summons and complaint" and thus were not subject to the court's personal jurisdiction). The Second Circuit has "left open the question 'whether a district court *must*

12

investigate its personal jurisdiction over [a] defendant before entering a default judgment.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (quoting *Sinoying Logistics*, 619 F.3d at 213 n.7) (emphasis in the original). In *Mickalis Pawn Shop*, however, the default was entered after the defendants appeared in the action, made – and lost – motions to dismiss for lack of personal jurisdiction, and then "moved to withdraw their respective counsel and announced to the district court that they would proceed no further in the litigation." *Id*. at 118. On those facts, the *Mickalis Pawn Shop* court held that the district court "did not abuse its discretion in entering a default and issuing a default judgment" without re-examining personal jurisdiction before doing so. *Id*. at 119, 133-36. Where, as here, the plaintiffs' filings "raise questions" as to whether the court may permissibly exercise personal jurisdiction over a defendant who has never appeared, it is well-settled that the court should – and in my view must – "consider *sua sponte* whether the plaintiff has set forth facts justifying the assertion of personal jurisdiction." *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at *6 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted,* 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd*, 691 F. App'x 8 (2d Cir. 2017). *See also Spin Master Ltd. v. ALVY*, 2020 WL 257474, at *1 (S.D.N.Y. Jan. 17, 2020) ("Before a judgment can be entered and damages or other relief can be awarded, even after default, the Court must be satisfied that it has personal jurisdiction over each Defaulting Defendant."); *Sheldon v. Plot Commerce*, 2016 WL 5107072, at *5 (E.D.N.Y. Aug. 26, 2016) (before recommending an award of damages after default, "the Court must first be satisfied" as to both subject matter and personal jurisdiction), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016); *Ahn*, 2013 WL 3055793, at *4 (citing *Sinoying* for the proposition that "before a court grants a motion for default judgment it has an affirmative duty to look into its jurisdiction over the parties").

### 2.   Liability

Following a default, all well-pleaded factual allegations in the complaint as to liability are "deemed admitted." *S.E.C. v. Razmilovic*, 738 F.3d 14, 19 (2d Cir. 2013), *as amended* (Nov. 26, 2013); *accord Mickalis Pawn Shop*, 645 F.3d at 137 (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint."); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor.").

However, the district court "need not agree that the alleged facts constitute a valid cause of action." *Mickalis Pawn Shop,* 645 F.3d at 137 (quoting *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). Since a default "only establishes a defendant's liability if [the plaintiff's] allegations are sufficient to state a cause of action," *Gesualdi*, 629 F. App'x at 113, the court must determine "whether the allegations in [the] complaint establish the defendants' liability as a matter of law." *Id.* (*citing Finkel*, 577 F.3d at 84). If the well-pleaded factual allegations establish the defaulting party's liability, the only remaining issue is "whether [p]laintiff has provided adequate support for [the requested] relief." *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

Conversely, if the well-pleaded factual allegations in the complaint fail to state a claim upon which relief can be granted, no damages can be awarded, even if the post-default inquest submissions supply the missing information. *See United States ex rel. Nat'l Dev. & Constr. Corp. v. United States Envtl. Universal Servs., Inc.*, 2014 WL 4652712, at *4 (S.D.N.Y. Sept. 2, 2014)

(quoting *Gutman v. Klein*, 2010 WL 4975593, at *10 (E.D.N.Y. Aug. 19, 2010)) ("[i]t is the . . .

[c]omplaint, not the inquest submissions, that establishes defendants' liability") (alterations in the

original); *J & J Sports Prods., Inc. v. Abdelraouf*, 2019 WL 457719, at *2 (E.D.N.Y. Feb. 5,

2019) (citing *Friedman v. Sharinn & Lipshie, P.C.*, 2013 WL 1873302, at *3 (E.D.N.Y. Mar. 28,

2013) ("It is the moving party's burden to demonstrate that it is entitled to recovery based on the

factual allegations pleaded in the complaint."), *report and recommendation adopted*, 2013 WL

1869924 (E.D.N.Y. May 3, 2013)).[4]

### 3.    Damages

Although the Court must accept all well-pleaded facts as true when determining liability,

it need not – and indeed cannot – rely on the plaintiffs' allegations to establish their damages.

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see*

---

[4] Although the only pleading served upon the Defaulted Defendants was the original Complaint, plaintiffs treat the TAC as their operative pleading for purposes of this inquest. They contend that they were not required to serve the TAC (or any of their amended pleadings) on those defendants because "[w]hen a defendant is in default in one complaint, he need not be served with a subsequent complaint so long as the pleading does not add any claims or new factual predicates." Prop. Findings at ECF page 11, ¶ 61 (quoting *DeCurtis v. Upward Bound Int'l, Inc.*, 2012 WL 4561127, at *5 (S.D.N.Y. Sept. 27, 2012), *aff'd sub nom. De Curtis v. Ferrandina*, 529 F. App'x 85 (2d Cir. 2013)); *see also* Fed. R. Civ. P. 5(a)(2) "a pleading that asserts a new claim for relief" against a non-appearing defendant "must be served . . . under Rule 4" even on "a party who is in default for failing to appear"). It is true that plaintiffs' various amendments did not add any wholly new claims. However, they did add a new plaintiff (Shi) and a new defendant (Kaiyi), as well as materially expanding plaintiff Zou's allegations as to the length of his employment (and consequently his damages claim). It is thus a close question whether plaintiffs were required to serve the TAC before relying on it to establish liability in default proceedings – in which case they would now be limited to a judgment bounded by the allegations of their original Complaint. *See*, *e.g.*, *Siemieniewicz v. CAZ Contracting Corp.*, 2012 WL 5183375, at *4 n.5 (E.D.N.Y. Sept. 21, 2012) ("Siemieniewicz never served the Amended Complaint on CAZ. As a result, CAZ's default establishes the truth only of the factual allegations in the initial Complaint."), *report and recommendation adopted as modified*, 2012 WL 5183000 (E.D.N.Y. Oct. 18, 2012). In this case, however, nothing hangs on the Rule 5(a)(2) question; the differences between the original Complaint and the TAC go to issues other than the liability of the Defaulting Defendants. Consequently, in Part II(C) of this Report and Recommendation, I consider both pleadings when analyzing the adequacy of plaintiffs' allegations as to liability.

*also Finkel,* 577 F.3d at 83 n.6 ("Although a court accepts as true all well pleaded allegations against a defaulting defendant for purposes of determining liability, a default is not an admission of damages, which must be established in a separate evidentiary proceeding."). After default, plaintiffs are required to substantiate their damages claim with "admissible, authenticated evidence." *McLaughlin v. Barron*, 2018 WL 1872535, at *2 (S.D.N.Y. Jan. 24, 2018), *report and recommendation adopted,* 2018 WL 993627 (S.D.N.Y. Feb. 20, 2018). *See also House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("[T]here must be a basis upon which the court may establish damages with reasonable certainty.").

**B.    The Court Lacks Personal Jurisdiction Over Six of the Seven Defaulted Defendants**

I am satisfied that this Court has subject matter jurisdiction over plaintiffs' claims. Because plaintiffs sue under a federal statute – the FLSA – subject matter jurisdiction is properly based on 28 U.S.C. § 1331. To the extent plaintiffs have adequately pleaded state law claims arising out of the same facts and circumstances, the Court may exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367. I am also satisfied that venue is appropriate in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2). However, this Court never acquired personal jurisdiction over six of the seven Defaulted Defendants.

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). *See also* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1353 (3d ed. 2019) (service of process is "the means by which a federal court gives notice to the defendant and asserts jurisdiction over him"). Where the defendant has defaulted, the plaintiff must establish adequate service in order to obtain a default judgment. *See Sheldon*, 2016 WL 5107072, at *6 ("failure to adequately prove proper service of

16

court documents . . . bars the entry of a default judgment"); *Lliviganay v. Cipriani 110 LLC*, 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009) (lack of proof of proper service "is an independent obstacle to a default judgment"). "The plaintiffs bear the burden of proving that service was adequate." *Lopez v. Yossi's Heimishe Bakery Inc.*, 2015 WL 1469619, at *4 (E.D.N.Y. Mar. 30, 2015); *accord Doe v. Alsaud,* 12 F.Supp.3d 684, 687 (S.D.N.Y. 2014).

As relevant here, an individual defendant may be served within the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Under state law, an individual may be served "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served," and then mailing the summons to the person's residence or "actual place of business" within the next 20 days. N.Y. C.P.L.R. (CPLR) § 308(2).

A corporation may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual" (that is, by following state law), or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and – if the agent is one authorized by statute and the statute so requires – by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(A)-(B). Under state law, a domestic corporation may be served by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service," CPLR § 311(a)(1), or by "personally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee,

which fee shall be a taxable disbursement. Service of process on such corporation shall be complete when the secretary of state is so served." N.Y. Bus. Corp. Law § 306(b)(1),

The corporate defendants are all New York corporations, Compl. ¶¶ 9, 13, 16; TAC ¶¶ 10, 14, 17. However, Lobster and Satori were dissolved in 2013 and 2014, respectively – long before plaintiffs initiated this lawsuit or hired a process server – and Best Miyako, although still an active corporation, had long since ceased operating its namesake restaurant. *See* Kaiyi Prop. Findings ¶¶ 5-7 (asserting that Kaiyi "began operations of the sushi restaurant on or about January 10, 2014," after "purchas[ing] the assets of the predecessor Lobster Sushi Corporation," and that since the acquisition defendant Xiang Zhuang Chen, the owner of Kaiyi, had been "the sole manager" of the restaurant); Yong Ltr. at 1 (advising the Court in 2016 that the Kaiyi Defendants "do not have contact information or means of communicating with Best Miyako Sushi Corp. or any of its principals").

Plaintiffs claim to have served all three of the defaulted corporations by delivering the summons and complaint to Sheckie "Doe," whom the process server encountered at the restaurant premises and identified as "a managing agent" of Lobster, Satori, and Best Miyako (Dkt. Nos. 25-27), "without explaining how [she] knew this to be so." *Wing Chan v. Xifu Food, Inc.,* 2020 WL 5027861, at *2 (E.D.N.Y. Aug. 5, 2020), *report and recommendation adopted*, 2020 WL 5027147 (E.D.N.Y. Aug. 25, 2020). Under the circumstances, "[t]his is insufficient to demonstrate proper service" upon Lobster, Satori, or Best Miyako. *Id.* The affidavits of service furnish no basis to believe that Ms. "Doe" was connected in any way to Lobster, Satori, or Best. Miyako, much less that she was "an officer, a managing or general agent, or any other agent authorized by appointment or law to receive service of process." *Lopez*, 2015 WL 1469619, at *4 (citing Fed. R. Civ. P. 4(h) and CPLR § 311(a)(1)).

18

"Service on a corporation . . . requires delivery to a high-level employee of a corporate defendant – someone 'who operates at its highest levels, or at least has overall authority to make high-level decisions on the part of the enterprise[.]'" *Lopez*, 2015 WL 1469619, at *4 (quoting *Cooney v. Barry School of Law,* 994 F. Supp. 2d 268, 270-71 (E.D.N.Y. 2014)). Where, as here, plaintiffs were advised that the Court had concerns about service of process but remained unable to provide any information about the position – or even the last name – of the person to whom the summons and complaint were delivered, "[e]ven viewed in the light most favorable to the plaintiffs, such service does not suffice[.]" *Id.* at *5 (finding service insufficient where the summons was served on an individual that the process server identified only as an acting manager of the store operated by the corporate defendant). *See also Zen Music, Inc. v. CVS Corp.*, 1998 WL 912102, at *3-4 (S.D.N.Y. Dec. 30, 1998) (summons given to a store manager was insufficient to serve process upon the corporation that operated store); *Macerich Queens Limited Partnership v. M.I.E. Hospitality, Inc.*, 746 N.Y.S.2d 341 (2002) (court did not acquire personal jurisdiction over a corporate defendant where service was made upon an individual identified as a "manager" but no evidence was presented that the individual was in fact a managing agent of the defendant corporation).

With respect to the defaulted individuals, plaintiffs similarly claim that service was accomplished when they delivered the summons and complaint to Ms. "Doe," whom they characterize for this purpose as "a person of suitable age and discretion" at defendants' "actual place of business," and followed up by mailing the papers to the same address. (Dkt. Nos. 28-31.) Ms. "Doe" may have been of "suitable age and discretion," but there is no evidence in the affidavits of service – or elsewhere in the record – that 642 Amsterdam Avenue was the "actual place of business" of any of the individuals when they were allegedly served there on June 8,

19

2016. To the contrary: Hiuling Cheung was the CEO of Satori, which may have operated the restaurant at some point but was dissolved on May 6, 2014. Prop. Findings Ex. 1, at ECF page 3. Xue Tiao Chen was the CEO of Lobster, which was dissolved even earlier, on January 15, 2013. *Id*. at ECF page 5. Fat Hin Cheng was listed as the ABC principal of Lobster on a license that expired on February 28, 2013. *Id*. at ECF page 7.

Peter Zou's name appears nowhere in any of the DOS or ABC records presented to the Court. Both plaintiffs attest that Peter Zou "hired" them – in September 2013 and September 2012, respectively. Chen Aff. ¶ 2; Zou Aff. ¶ 2. However, plaintiffs provide no evidence that Peter Zou was still working at the restaurant when their employment terminated in 2014, much less that it was his "actual place of business" when plaintiffs' process service visited two years later, on June 8, 2016. *See Baity v. Kralik*, 51 F. Supp. 3d 414, 431 (S.D.N.Y. 2014) (quoting *Colvin v. State Univ. Coll. at Farmingdale*, 2014 WL 2863224, at *14 (E.D.N.Y. June 19, 2014)) ("A defendant's 'actual place of business' is his or her 'business address at the time of service, and not when the cause of action arose.'"). To the contrary: plaintiff Shi, who started work at the restaurant on November 1, 2014, TAC ¶ 76, concedes that he "did not work for" any of the Defaulted Defendants, including Peter Zou. Prop. Findings at ECF page 9, ¶ 56.

Since there is no evidence to suggest that Hiuling Cheung, Xue Tiao Chen, Fat Hin Cheng or Peter Zou was actually working at Miyako Sushi in June 2016, when plaintiffs' process server delivered the summons and complaint to Ms. "Doe," plaintiffs have failed to establish effective service upon any of the individual Defaulted Defendants. *See Dominguez v. B S Supermarket, Inc.*, 2016 WL 7647577, at *4 (E.D.N.Y. Dec. 1, 2016) (service on individual defendant was insufficient where the store where service was effected was no longer his actual place of business), *report and recommendation adopted*, 2017 WL 52852 (E.D.N.Y. Jan. 4,

2017); *Kwan v. Schlein*, 441 F. Supp. 2d 491, 497 (S.D.N.Y. 2006) (dismissing claim against individual defendant for insufficient service where he was a minority shareholder of the publishing company where service was effected but there was no indication that the company's office was his actual place of business).

On November 21, 2016, plaintiffs made a second attempt to serve Satori, this time by delivering the summons and complaint to Sue Zoukey, an authorized agent of the Secretary of State, in Albany, New York. (Dkt. No. 64.) Notwithstanding Satori's dissolution more than two years earlier, this was effective service. S*ee NYCTL 19982 Trust v.* Cooper *Third Associates*, 110 N.Y.S.3d 429, 431 (2019) (quoting *Bruce Supply Corp. v. New Wave Mech.*, 773 N.Y.S.2d 408, 409 (2004) ("personal jurisdiction over a dissolved corporation 'may be obtained through service upon the Secretary of State'"); *accord Lu Nan Fan v. Jenny & Richard's Inc.*, 2019 WL 1549033, at *4 (E.D.N.Y. Feb. 22, 2019). As to the remainder of the Defaulted Defendants, however, no further service attempts were made. Consequently, this Court lacks personal jurisdiction over Best Miyako, Lobster, Peter Zou, Hiuling Cheung, Xue Tiao Chen, or Fat Hin Cheng, and cannot enter a default judgment against them. *Lopez*, 2015 WL 1469619, at *4; *Dominguez*, 2016 WL 7647577, at *7.

### C.   The Pleadings Fail to Establish that Satori Was Plaintiffs' Employer

To state an FLSA wage claim, a plaintiff must allege that: (1) he was an employee of the defendant against whom he seeks damages; (2) he was "engaged in commerce" or employed by "an enterprise engaged in commerce," *see* 29 U.S.C. §§ 206(a), 207(a); and (3) "[he] worked hours for which [he] did not receive minimum and/or overtime wages." *Pineda v. Tokana Cafe Bar Restorant Inc.*, 2017 WL 1194242, at *2 (S.D.N.Y. Mar. 30, 2017) (citing *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007)). NYLL wage claims involve a similar

21

analysis, except that the NYLL "does not require a plaintiff to show that the employer was involved in interstate commerce or had $500,000 in minimum annual sales," as is required under 29 U.S.C. § 203(s)(1)(A). *Reyes v. Lincoln Deli Grocery Corp.*, 2018 WL 2722455, at *3 (S.D.N.Y. June 5, 2018) (citing *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011)).

The FLSA's definition of "[e]mployer" is broad: "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "An individual may simultaneously have multiple 'employers' for the purposes of the FLSA, in which event, 'all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA].'" *Martin v. Sprint United Mgmt. Co*., 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017) (quoting 29 C.F.R. § 791.2(a)). To determine whether a plaintiff is an "employee" of a particular defendant for FLSA purposes, courts examine the "economic reality" of the working relationship. *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). Specifically, in the Second Circuit, courts examine four nonexclusive factors to assess the "economic reality" of an alleged employment relationship, including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 105 (quoting *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)). The inquiry considers the "totality of circumstances," so "[n]o single factor is dispositive." *Feng Chen v. Patel*, 2019 WL 2763836, at *5 (S.D.N.Y. July 2, 2019).

Similarly, under the NYLL, the definition of "employer" is broad. *See* NYLL § 190(3) ("'Employer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service"), and the

crucial inquiry, in determining whether an employer-employee relationship exists, is the "degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) (quoting *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198, 802 N.E.2d 1090 (2003)). Although the New York Court of Appeals "has not yet answered the question of whether the test for 'employer' status is the same under the FLSA and the NYLL," *Camara v. Kenner*, 2018 WL 1596195, at *7 (S.D.N.Y. Mar. 29, 2018) (citing *Irizarry*, 722 F.3d at 117), "[t]here is general support for giving [the] FLSA and the New York Labor Law consistent interpretations . . . [a]nd there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." *Hart*, 967 F. Supp. 2d at 924 (internal citations omitted). *See also Morales v. Anyelisa Rest. Corp.*, 2019 WL 3430106, at *4 (S.D.N.Y. July 30, 2019) (Koeltl, J.) ("The New York Court of Appeals has not yet answered the question of whether the test for 'employer' status it the same under the FLSA and the NYLL, *see Irizarry*, 722 F.3d at 117, but courts have generally assumed that it is.").

In this case, plaintiffs allege they were "employed by" or "worked as a deliveryman for" all of the corporate defendants, including Satori, but never set forth any concrete facts supporting that allegation, much less any facts specific to Satori. *See* Compl. ¶¶ 7-8, 41, 56; TAC ¶¶ 7-8, 46, 61. They do not allege, for example, that they were hired by Satori (or by any individual linked specifically to Satori), supervised by Satori (or by any individual linked specifically to Satori), or paid by Satori (or by any individual specifically linked to Satori).[5] They do not even allege when

---

[5] In fact, the pleadings are completely silent as to which corporate defendant(s) hired, supervised, or paid them. The TAC suggests that three of the individual defendants had on-site supervisory roles during plaintiffs' employment. *See* TAC ¶¶ 24 (Hang Ying Li was known as "Lady Boss"), 27 (Xiang Zhuang Chen was known to them as "Boss"), 29 (Peter Zou was known to them as "Manager"). However, nothing in the pleadings, or in the DOS and ABC records proffered by

Satori (as opposed to the other corporate defendants) owned and operated the restaurant during

their tenure.[6] Instead, as to each defendant, plaintiffs simply repeat the elements of the economic

relationship test, alleging – in language lifted straight from *Irizzary* – that each and every

individual defendant "(1) had the power to hire and fire employees, (2) supervised and controlled

employee work schedules or conditions of employment, (3) determined the rate and method of

payment, and (4) maintained employment records at" all four corporate defendants. *Compare*

TAC ¶¶ 24, 27, 29, 31, 33, 35 *with Irizarry*, 722 F.3d at 105.

These allegations would not withstand a motion to dismiss made pursuant to Fed. R. Civ.

P. 12(b)(6) or 12(c), because "the question of 'whether *a particular* defendant can be considered

a plaintiff's 'employer' is a fact-specific inquiry,'" *Li v. Ichiro Sushi, Inc.*, 2016 WL 1271068, at

*6 (S.D.N.Y. Mar. 29, 2016) (quoting *Perez v. Westchester Foreign Autos, Inc.*, 2013 WL

749497, at *7 (S.D.N.Y. Feb. 28, 2013)) (emphasis added by *Li*), that cannot be satisfied with

boilerplate allegations lacking any specific facts. *See*, *e.g.*, *Huer Huang v. Shanghai City Corp.*,

459 F. Supp. 3d 580, 588 (S.D.N.Y. 2020) (dismissing FLSA and NYLL claims against 12

defendants because plaintiffs' "identical allegations" as to all 12 of them, in "identical language"

drawn from the relevant caselaw, failed to establish that they were each plaintiffs' "employer");

*Ruixuan Cui*, 2019 WL 4573226, at *4 (granting judgment on the pleadings to certain defendants

---

plaintiffs, associates any of these individuals specifically with Satori. Conversely, while the DOS
records submitted by plaintiffs identify one individual – Hiuling Cheung – as an officer of Satori
(prior to its dissolution), *see* Prop. Findings Ex. 1, at ECF page 3, there is no suggestion,
anywhere in the record, that plaintiffs ever met Hiuling Cheung, much less that he hired them,
supervised them, paid them, or otherwise engaged in any specific activity that would render him
– and by extension Satori – their "employer" under the *Irizzary* "economic relationship" test.

because, as to them, "the Complaint merely recites the elements of the economic reality test");

*Marin v. APU Foods Corp.*, 2018 WL 1462236, at *4 (E.D.N.Y. Feb. 26, 2018) ("Mere

recitations of the elements of liability or the factors of the 'economic reality' test in a complaint

are not adequate."), *report and recommendation adopted,* 2018 WL 1459488 (E.D.N.Y. Mar. 23,

2018); *Bravo v. Established Burger One, LLC*, 2013 WL 5549495, at *7 (S.D.N.Y. Oct. 8, 2013)

(dismissing claims against certain defendants as to whom "[p]laintiffs allege no specific facts,

aside from the elements of the 'economic reality test,' to satisfy their pleading burden").

For the same reasons, plaintiffs' boilerplate allegations are insufficient to establish

liability after default. "The fact that a complaint stands unanswered does not . . . suffice to

establish liability on its claims: a default does not establish conclusory allegations, nor does it

excuse any defects in the plaintiffs' pleading." *Lopez*, 2015 WL 1469619, at *3. *See also, e.g.*,

*Perez*, 2016 WL 1359218, at *4 (noting that defaults are "generally disfavored" and therefore

should not be granted, even under the pro-employee FLSA, if the plaintiff cannot "make

sufficient allegations to establish liability" against each non-appearing defendant). *See*

*Salamanca v. ABC Corp.*, 2019 WL 8807843, at *4 (E.D.N.Y. Oct. 30, 2019) (plaintiffs were not

entitled to a default judgment on their FLSA and NYLL claims because they failed to allege

specific *facts* "establishing that Defendants satisfy the economic realities test"), *report and*

*recommendation adopted,* 2020 WL 2542497 (E.D.N.Y. May 18, 2020).

The pleadings now before the Curt are strikingly similar to those found wanting in

*Salamanca*. As to the individual defendants, the *Salamanca* complaint alleged only, in

---

[6] Insofar as the record reflects, none of the corporate defendants had any overlapping ownership. *See* Prop. Findings Ex. 1. Perhaps for this reason, plaintiffs never alleged that the corporate defendants constituted an integrated enterprise. *Cf. Ruixuan Cui*, 2019 WL 4573226, at *11-12 (denying motion to dismiss claims as to certain corporate defendants because plaintiffs adequately pleaded that they constituted a single "entity" for FLSA purposes).

boilerplate language, that they each "(i) own and/or operate [the corporate defendant]; (ii) are each its Chief Executive Officer; (iii) have power over personnel and payroll decisions; and (iv) can hire and fire employees and establish their wages, set their schedules, and maintain their employment records." 2019 WL 8807843, at *4. As to the corporate defendant, the *Salamanca* complaint "similarly omit[ted] any contention that the entity controlled or ratified any employment-related decisions." *Id.* The court concluded – as I do here – that "[t]hese conclusory allegations and vital omissions . . . fall short of the minimal pleading requirements necessary to establish liability as a matter of law," *id.*, and therefore that plaintiffs were not entitled to a default judgment in any amount.

## D.   The Remaining Claims Should Be Dismissed

Where a plaintiff has failed to effect service on a non-appearing defendant before seeking a default judgment, "the Court has discretion to dismiss the action, but dismissal is not mandatory." *Li*, 2016 WL 1271068, at *4 (quoting *Darden v. DaimlerChrysler N.A. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002)). The same is true after default. *See Cooney*, 994 F. Supp. 2d at 271 ("[T]he Court has discretion to either dismiss the case with leave to refile, or to quash service so that a plaintiff can again attempt proper service."). "The Second Circuit has suggested that when it is likely that the plaintiff will be able to effect proper service if given another chance, the proper remedy may be to quash service rather than dismiss the case." *Id.* (citing *Alexander v. Unification Church of America,* 634 F.2d 673, 675 (2d Cir. 1980), *abrogated on other grounds by PSI Metals, Inc. v. Firemen's Ins. Co. of Newark, N.J.,* 839 F.2d 42 (2d Cir. 1988)).

In this case, however, plaintiffs' first and only attempt at serving six of the seven Defaulting Defendants took place in 2016, almost five years ago, after which they made no

efforts to re-serve, notwithstanding the fairly obvious deficiencies in their initial attempt and the equally obvious solution (as least as to the corporate defendants), which they implemented with respect to Satori but not as to Best Miyako or Lobster. Moreover, even if the service defects could be overcome, the pleading deficiencies discussed above make it unlikely that plaintiffs would be able to establish liability as against any of the Defaulted Defendants unless they were also given leave to replead. Here too, the Court has considerable discretion. *See, e.g., J & J Sports Prods., Inc. v. RK Soto Enterprises Inc.*, 2020 WL 7684894, at \*15 (recommending, on the grounds of improper service and insufficient allegations in the pleading, that the motion for default judgment be denied, and the operative pleading be dismissed with 30 days' leave to replead), *report and recommendation adopted as modified*, 2020 WL 7041089 (E.D.N.Y. Dec. 1, 2020) (granting plaintiff seven rather than 30 days to replead); *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 523-24 (S.D.N.Y. Aug. 24, 2012) (adopting report and recommendation to vacate default judgment as to inadequately pled claims, dismissing the bulk of them with prejudice, but allowing plaintiff to replead one of her claims). In this case, given that plaintiffs have already amended their pleading three times without improving their allegations as to the Defaulted Defendants, I do not recommend this option.

## III.    CONCLUSION

For the reasons set forth above, I respectfully recommend that the Court's September 12, 2019 order granting plaintiffs' motion for a default judgment (Dkt. No. 193) be vacated; that no judgment, in any amount, be entered against the Defaulted Defendants; and that plaintiffs' claims against the Defaulted Defendant be DISMISSED without prejudice.

Dated: New York, New York
      February 1, 2021

**BARBARA MOSES**
**United States Magistrate Judge**

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). *See also* Fed. R. Civ. P. 6(a), (d). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Any such objections shall be filed with the Clerk of the Court.  Due to the COVID-19 public health emergency, paper courtesy copies should *not* be delivered to the Hon. John G. Koeltl or to the chambers of the undersigned magistrate judge. Any request for an extension of time to file objections must be directed to Judge Koeltl. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review**. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).